MARY ALICE JEFFERY,

*Administratrix, etc.*

*v.*

THOMAS E. MCHUGH, *Chief Judge*

*of The 13th Judicial Circuit*

*of West Virginia*

(No. 14666)

Decided January 20, 1981.

*Jay M. Potter and John R. Mitchell* for petitioner.

*James E. Roark,* Prosecuting Attorney, *Pamela Dawn Tarr,* Assistant Prosecuting Attorney, for respondent.

HARSHBARGER, JUSTICE:

On September 30, 1979, seventeen-year-old M.D.J. apparently hanged himself in the Kanawha County Jail.

The circumstances of his death received widespread publicity, and twelve days later the county prosecutor moved the circuit court for an order opening the juvenile's records. Chief Judge Thomas McHugh:

> ... ORDERED that any and all dispositional orders; (2) any and all transcripts of juvenile proceedings before this Court; and (3) a report of investigation by the Sheriff of Kanawha County concerning the suicide of the aforesaid deceased juvenile, be transmitted forthwith to the custody of the Clerk of the Circuit Court of Kanawha County, there to be maintained in the manner prescribed by law as public records and documents separate and apart from the remainder of said records, which confidentiality is maintained. . . .

The child's mother asks us to prohibit release of the records.

The confidentiality of juvenile records has been dictated by the Legislature, W. Va. Code, 49-7-1,[1] and Code,

---

[1] Code, 49-7-1. Confidentiality of records.

All records of the state department, the court and its officials, law-enforcement agencies and other agencies or facilities concerning a child as defined in this chapter *shall be kept confidential* and shall not be released: Provided, that such records, *except* adoption records, *juvenile court records* and records disclosing the identity of a complainant of child abuse or neglect, shall be made available . . . . (Emphasis added.)

*Compare* IJA/ABA Juvenile Justice Standards Project, Standards Relating to Juvenile Records and Information Systems, §§15.1 15.6 (1977):

15.1 General policy on access.

A. Juvenile records should not be public records.

B. Access to and the use of juvenile records should be strictly controlled to limit the risk that disclosure will result in the misuse or misinterpretation of information, the unnecessary denial of opportunities and benefits to juveniles, or an interference with the purposes of official intervention.

*Commentary*

The principle that juvenile court records should be confidential and, therefore, should not be public records is well accepted and is an express part of the law of most states . . . .

15.6 Secondary disclosure limited.

49-5-17(d), defines the five exceptions to the rule that "juvenile records *shall not be disclosed or made available for inspection.*" By written order, the court may only permit disclosure when:

(1) A court having juvenile jurisdiction has the child before it in a juvenile proceeding;

(2) A court exercising criminal jurisdiction over the child requests such records for the purpose of a presentence report or other dispositional proceeding;

(3) The child or counsel for the child requests disclosure or inspection of such records;

(4) The officials of public institutions to which a child is committed require such records for transfer, parole or discharge considerations; or

(5) A person doing research requests disclosure, on the condition that information which would identify the child or family involved in the proceeding shall not be divulged.

W. Va. Code, 49-5-17(d).

This Court could expand upon the legislatively-created exceptions only if there were constitution-compelled reasons to do so,[2] and we are cited to none, and have found none. Also, there is no authority in any other jurisdiction for court-ordered revelation of a deceased juvenile's records whose confidentiality is established by statute.

None of the limited exceptions in Code, 49-5-17(d), include disclosure to a prosecutor unless a court has the child before it in a proceeding, and the statute was clearly designed to prohibit *public* disclosure anytime, even when the records are allowed to be opened in one of the exceptional circumstances enumerated. *See also, Standards, supra,* §§ 15.1 and 15.6.

---

A person, other than the juvenile, his or her parents, and his or her attorney, who is accorded access to information, pursuant to Part XV of these standards, should not disclose that information to any other person unless that person is also authorized to receive that information pursuant to this Section.

[2] *See, Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

Code, 49-7-1, refers to the confidentiality of juvenile records. Although this section provides additional circumstances in which they may be released, it was amended in 1978 to specifically exempt "juvenile court records" from those provisions. *See* Footnote 1, *supra.*

The prosecutor has no standing to be before the circuit court with this request. When M.D.J. died, his case ended, and there is no other pending action to which the prosecutor is a party that involves M.D.J. and might allow invoking the statutory exceptions. *See,* 67A C.J.S., Parties, §§ 11-12; 59 Am. Jur. 2d, Parties, §§ 26-27. *See also,* Code, 7-4-1. We therefore decide that the motion should not have been granted, and prohibition is awarded.

*Writ granted.*

NEELY, JUSTICE, *dissenting:*

I dissent to the majority opinion in this case because the result is absurd. *W. Va. Code,* 49-5-17 [1978] or 49-7-1 [1978] are silent with regard to the confidentiality of the records of a dead child. It appears quite obvious that the intention of the Legislature was to protect the living, and while there may be a valid policy reason for not releasing the records of a dead juvenile to satisfy idle curiosity, once the rights of the living are at stake, those rights must take precedence over the right of a dead child to be protected in his reputation.

In the cases of *McGraw v. Review Board,* 165 W.Va. 704, 264 S.E.2d 168 (1980) and *McGraw v. Review Board,* 165 W.Va. 704, 271 S.E.2d 344 (1980), this Court has held that the confidentiality of judicial disciplinary proceedings must yield to a defendant's right to a fair trial, confrontation of witnesses, and general due process. The facts of the case before us now demonstrate that the tragic death of the child in question generated a heated public controversy which cast serious aspersions upon the reputation of living persons; those persons have a right to vindicate their reputations, and since they were public officials holding elected offices this right almost has significant elements of a property right.