453 S.E.2d 631

The **OGDEN NEWSPAPERS, INC.,**
**d/b/a Parkersburg Sentinel Co.,**
**Plaintiff Below, Appellant,**

v.

**CITY OF WILLIAMSTOWN, a Municipal**
**Corporation, Defendant Below,**
**Appellee.**

**No. 22098.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 20, 1994.

Decided Dec. 15, 1994.

Jacqueline A. Wilson, Steptoe & Johnson, Clarksburg, for appellant.

Patrick E. McFarland, Hague & McFarland, Parkersburg, for appellee.

NEELY, Justice:

On 10 March 1993, *The Parkersburg News,* a division of Ogden Newspapers, Inc., made a written request under the West Virginia Freedom of Information Act (FOIA)[1] to review the Williamstown Police Department's incident report of a 22 February 1993 fight between two juveniles involving a gun. The newspaper requested a redacted copy of the report—one that did not name the two juveniles. The newspaper's request was allegedly made in an effort to inform the public about incidents that impact the public safety and welfare. The newspaper asserts that it has historically been granted access to these documents.

The City denied the newspaper's request because the incident report was part of the file of a law enforcement agency, and because the requested information concerned juveniles. Based upon the City's denial, the newspaper filed a Complaint for Declaratory and Injunctive Relief in the Circuit Court of Wood County, requesting that the court enjoin the City of Williamstown from withholding information contained in the police incident report, pursuant to the West Virginia Freedom of Information Act, *W.Va.Code* 29B–1–1 [1977] *et seq.* In response, the City proffered a Motion to Dismiss.

The Circuit Court granted the City's motion to dismiss on the grounds that: (1) the requested incident report is exempted from disclosure under the law enforcement exemption to the Freedom of Information Act; and (2) the incident report is not a public record because the reported incident involves juveniles. This appeal followed. In view of the clear public policy in favor of the disclosure of public records, and the ability to release redacted documents to assure that information that might lead to the disclosure of the juveniles identities is not revealed, we reverse.

I.

The Circuit Court ruled that the police incident report requested by the press was not a *public record* subject to disclosure under the West Virginia Freedom of Information Act, *W.Va.Code* 29B–1–1 [1977] *et seq.* Although this presents an issue of first impression before the Court, we find the definition of "public record" in *W.Va.Code* 29B–1–3 [1992] to be plain and unambiguous. "Public record" as used in the Act is broadly defined as "any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body." *W.Va.Code* 29B–1–2(4) [1977].

■ The West Virginia Freedom of Information Act was adopted by the legislature in 1977. The purpose of the legislation is to open the workings of government to the public so that the electorate may be informed and retain control. *W.Va.Code* 29B–1–1 [1977]. In order to facilitate this purpose, this Court has stated on numerous occasions that the disclosure provisions of the FOIA are to be liberally construed. *Daily Gazette Co. v. Caryl,* 181 W.Va. 42, 380 S.E.2d 209 (1989); *4–H Road Community Ass'n v. WVU Foundation, Inc.,* 182 W.Va. 434, 388 S.E.2d 308 (1989); *Queen v. West Virginia Univ. Hosps., Inc.,* 179 W.Va. 95, 365 S.E.2d 375 (1987).

■ West Virginia's Freedom of Information Act ("FOIA") set forth in *W.Va.Code*

1. *W.Va.Code* 29B–1–1 [1977].

29B–1–1 [1977], *et seq.*, provides in its declaration of policy:

> Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is a servant of the people, and not the master of them, it is hereby declared to be the public policy of the state of West Virginia that all persons are, unless otherwise expressly provided by law, entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments of government they have created. To that end, the *provisions of this article shall be liberally construed with the view of carrying out the above declaration of public policy.*

[Emphasis added.] Accordingly, a liberal interpretation should be given to the definition of "public record."

In this case, given the significance of keeping the public informed on matters of general welfare, we find that police incident reports are "public records" as defined by *W.Va.Code* 29B–1–2 [1977]. As a rule, statutes enacted for the public good are to be interpreted in the public's favor. The public has an interest in receiving information about criminal activity within the community. Furthermore, the police are conducting "the public's business" when they respond to reported incidents of crime. The incident report was written by a public officer, who was authorized to do so, and the report was owned and retained by a public law enforcement agency. There is no doubt that the report in question is a "public record" within contemplation of the West Virginia FOIA.

Almost every state has some open records law similar to the West Virginia FOIA, and we are not alone in finding police incident reports to be public records subject to disclosure under Freedom of Information Act. Many jurisdictions considering this issue have also held that police incident reports are public records.[2] *Hengel v. Pine Bluff,* 307 Ark. 457, 821 S.W.2d 761 (1991); *Asbury Park Press, Inc. v. Borough of Seaside Heights,* 246 N.J.Super. 62, 586 A.2d 870 (1990); *State v. McDaniel,* 504 So.2d 160 (La.1987); *South Coast Newspapers, Inc. v. City of Oceanside,* 160 Cal.App.3d 261, 206 Cal.Rptr. 527 (1984).

West Virginia has both statutory and common law bases allowing access to public records. The West Virginia Freedom of Information Act, *W.Va.Code* 29B–1–1 [1977] *et seq.; State v. Harrison,* 130 W.Va. 246, 43 S.E.2d 214 (1947); *State ex rel. Charleston Mail Association v. Kelly,* 149 W.Va. 766, 143 S.E.2d 136 (1965); *Daily Gazette Co., Inc. v. Withrow,* 177 W.Va. 110, 350 S.E.2d 738 (1986). Although we find that the incident report at issue is a "public record", disclosure is still not required if the requested record falls within one of the exceptions to the West Virginia Freedom of Information Act.

The FOIA states that "[e]very person has a right to inspect or copy any public record of a public body in this state, *except as otherwise expressly provided* by section four [§ 29B–1–4] of this article." *W.Va.Code* 29B–1–3(1) [1992]. *W.Va.Code* 29B–1–4 [1977] states, in pertinent part:

> The following categories of information are specifically exempt from disclosure under the provisions of this article:
>
> .     .     .     .     .
>
> (4) Records of law-enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating to law enforcement;
>
> (5) Information specifically exempted from disclosure by statute;

---

2. Although none of the cases cited here involved juveniles, we shall address the issue of juvenile confidentiality separately.

We shall address these two exceptions separately.

We previously addressed the law enforcement records exception in *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985), albeit not specifically as applied to police incident reports.[3] In *Hechler*, we stated that primary purpose of the law enforcement exemption is "to prevent premature disclosure of investigatory materials which might be used in a law enforcement action."[4] *Id.* at 447, 333 S.E.2d at 812, *quoting, Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376, 383 (1982). The meaning of the law enforcement exemption was clarified when we stated that:

"Records ... that deal with" the detection and investigation of crimes, within the meaning of *W.Va.Code* 29B–1–4(4) [1977], do not include information generated pursuant to routine administration or oversight, but is limited to information compiled as part of an inquiry into specific suspected violations of the law.

*Hechler*, 175 W.Va. at 447, 333 S.E.2d at 813.

■ The report sought by the newspaper in this case was prepared following an inquiry into a specific violation of the law; *i.e.*, a fight between the two juveniles involving a gun. Therefore, the document sought by the newspaper was a law enforcement record within the meaning of the exemption.[5] In *Hechler* we noted that the state of Texas has an exemption worded identically to ours.[6] *Hechler*, 175 W.Va. at 448, 333 S.E.2d at 813. Similarly, Texas law provides a useful guide in this case because Texas has considered this issue specifically. Texas also has a similar law regarding the confidentiality of juvenile records; however, the confidentiality of juvenile records shall be addressed separately.

The appellant newspaper asserts that it merely requested a redacted copy of the incident report containing factual information providing a basic description of *what* happened, *when* it happened, and *where* it happened. This is the type of information in the "offense report" considered by the Texas Court of Civil Appeals in *Houston Chronicle Pub. Co. v. City of Houston*, 531 S.W.2d 177 (Tex.Civ.App.1975), although the offense report at issue in that case did not involve juveniles. In *Houston Chronicle* the court held that the news media and the public have a right of access to information concerning crime in the community and to information relating to activities of law enforcement agencies under the first amendment to the *U.S. Constitution.* Offense reports or "incident reports," include information such as: details of the offense committed, the time

---

**3.** In *Hechler, supra,* we ruled that the law enforcement exception did not prohibit the Secretary of State from releasing the names and addresses of security guards, furnished to the state pursuant to its licensing and regulation of the guards' employer.

**4.** The United States Supreme Court has stated that in originally enacting the law enforcement exemption to the federal FOIA,

Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came to present their cases. Foremost among the purposes of this Exemption was to prevent 'harm [to] the Government's case in court,' S.Rep. No. 813, 89th Cong., 1st Sess. (1965)....

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978).

**5.** In *Hechler*, we stated:
The language, "internal records and notations ... which are maintained for internal use is

matters relating to law enforcement," within the meaning of *W.Va.Code* 29B–1–4(4) [1977], refers to "confidential investigative techniques and procedures." 175 W.Va. at 447–48, 333 S.E.2d at 813. The basic factual information contained in the incident report at issue in this case makes no reference to confidential police investigative techniques and procedures. Thus, our inquiry shall focus exclusively on the law enforcement records portion of *W.Va.Code* 29B–1–4(4) [1977].

**6.** *Tex.Rev.Civ.Stat.Ann.*, art. 6252–17a, §§ 3(a)(1), 3(a)(8) (Vernon Supp.1985). Section 3(a)(1) exempts "information deemed confidential by law, either Constitutional, *statutory*, or by judicial decision." [Emphasis added.] That section performs essentially the same function as the exception found in *W.Va.Code* 29B–1–5, banning disclosure of "[i]nformation specifically exempted from disclosure by statute." The language of the Texas law enforcement records exception contained in Section 3(a)(8), is identical to *W.Va. Code* 29B–1–4, the text of which is quoted in the body of this opinion.

and location of the incident, the identity of the complainant, the premises and property involved, any identification or description of witnesses, and additional information such as the weather, and the names of the investigating officers. *Houston Chronicle*, 531 S.W.2d at 179.

*Houston Chronicle* also held that an offense report is a record of a law enforcement agency, dealing with the "detection and investigation of crime", within the statutory exemption to the Texas FOIA.[7] 531 S.W.2d at 185. Nonetheless, in recognition of the first amendment right of access, the court in *Houston Chronicle* applied a balancing test weighing the public's right to know about police and criminal activity in the community against the City and State "interest in preserving the secrecy of their records from the eyes of defendants and their counsel in criminal actions." [Footnote omitted.] *Houston Chronicle*, 531 S.W.2d at 186. Noting that these offense reports are extremely useful to the press, "in the discharge of its obligation to inform the public", the court held that these competing interests can be met by allowing partial access to information contained in the offense reports. *Id.*

## II.

■ Just as the court in *Houston Chronicle, supra*, did not end its analysis upon finding that the offense report was within the law enforcement records exception to the state's FOIA, we too must continue our analysis. According to our case law, the fact that a document is a law enforcement record does not automatically exclude it from disclosure under the FOIA. Once a document is determined to be a law enforcement record, it may still be disclosed if society's interest in seeing the document outweighs the government's

interest in keeping the document confidential.

In *Sattler v. Holliday*, 173 W.Va. 471, 318 S.E.2d 50 (1984), this Court reviewed the history of the law enforcement exemption in this state and in the federal Freedom of Information Act,[8] noting that our law enforcement exemption differs from the federal law enforcement exemption. Before 1974, the federal act was very much like our current FOIA; however, in 1974 the federal act was amended to include certain enumerated exemptions under the general enforcement exemption and to require disclosure in all other circumstances. Before the 1974 amendment the federal exemption for law enforcement and investigatory records had been interpreted to permit a blanket exemption for all law enforcement and investigatory records.[9] We stated in *Sattler* that:

> Although our law enforcement records exemption was adopted after the federal exemption had been amended, it did not include the new language comparable to the federal statute which enlarged access to these records.... *Nonetheless, a good argument could be made that material should only be exempt if it protects an interest that weighs more greatly than the public's right to know.*

[Emphasis added.] *Sattler*, 318 S.E.2d at 52.

■ The Texas court in *Houston Chronicle, supra*, applying a balancing test similar to ours stated in *Sattler*, found that there was a right of access to information contained on the first page of the offense report "structured to include the offense committed, location of the crime, identification and description of the complainant, the premises involved, the time of the occurrence, property involved, vehicles involved, description of

---

**7.** The Appellees' brief incorrectly concluded that the mere fact that the Texas court in *Houston Chronicle* found the incident report to be within the law enforcement exception identical to our exception set forth in *W.Va.Code* 29B–1–4(4) [1977], made the Appellants' reliance on this case fatal to their claim for relief. Had the appellees' read the entire case to its conclusion, they would have discovered that the court applied further analysis to conclude that there is a constitutionally protected right of access to certain information contained in offense reports.

**8.** The federal Freedom of Information Act is located at 5 U.S.C. § 552, the law enforcement exception is at 5 U.S.C. § 552(b)(7).

**9.** For a complete history of the federal law enforcement exemption *see FBI v. Abramson*, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978).

the weather, a detailed description of the offense in question, and the names of the investigating officers."[10] *Houston Chronicle,* 531 S.W.2d at 187. This right of access did not include parts of the offense report containing a suspect's confession, or officers' views on the credibility of witnesses, statements by informants, laboratory tests or ballistics reports, fingerprint comparisons, or officers' speculations about the guilt of the suspect. To the extent that information in an incident report dealing with the detection and investigation of crime will not compromise an ongoing law enforcement investigation, we hold that there is a public right of access under the West Virginia Freedom of Information Act.

### III.

■ Our analysis in this case is complicated by the fact that the reported incident involved juveniles. Thus, we must weigh on the one hand the public's right to know, and on the other hand we must weigh the state's interest in keeping juvenile records and proceedings confidential. The law treats juveniles differently than others. "From the earliest time infants were regarded as entitled to special protection from the State." *State v. Boles,* 147 W.Va. 674, 678, 130 S.E.2d 192, 195 (1963). Our juvenile system seeks to rehabilitate youthful offenders rather than punish them. "The Juvenile Court is theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. The objectives are to provide measures of guidance and rehabilitation ... not to fix criminal responsibility, guilt and punishment." *Kent v. United States,* 383 U.S. 541, 554, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 (1966).

In order to accomplish the important goals of the juvenile system, it is essential that certain aspects of a juvenile criminal investigation not become public. If a juvenile who

has committed a crime has any hope of being rehabilitated, the state must take steps to keep the child's name from being associated with criminal activity.[11] Thus, the state's interest in keeping juvenile information confidential is very high. Indeed, at one time this state placed such a high value on the secrecy of juvenile proceedings that it sought to make criminal the publication of a child's name in a juvenile proceeding. *See Daily Mail Pub. Co. v. Smith,* 161 W.Va. 684, 248 S.E.2d 269 (1978) (holding that the state may not place a prior restraint on a newspaper from printing the name of a child in a juvenile proceeding.)

Because of the sensitive nature of crimes involving juveniles and the central role confidentiality plays in a juvenile's rehabilitation, the scale generally tips in favor of confidentiality rather than disclosure of juvenile law enforcement records. In this case, the newspaper argues that it was merely seeking information regarding the time, date, place and nature of the incident, not the juveniles' names. In *Hechler,* we stated that: "the following two salient points must be remembered in any FOIA case, regardless of which exemption is claimed to be applicable. First, the *fullest responsible disclosure,* not confidentiality, is the dominant objective of the Act. Second, the exclusive *exemptions from disclosure must be narrowly construed."* [Emphasis added.] *Hechler,* 175 W.Va. at 445, 333 S.E.2d at 810, (citing *Department of Air Force v. Rose,* 425 U.S. 352, 360–362, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11, 21–22 (1976)).

We find that the Appellant newspapers make a strong case for providing public access to incident reports, so that the press can fulfill its obligations to keep the public informed. We do not wish to unnecessarily close the door on the press and the public's right of access to factual information about incidents impacting public safety and welfare,

10. This Court has also created a balancing test to be used under the invasion of privacy exemption of the FOIA. *Child Protection Group v. Cline,* 177 W.Va. 29, 350 S.E.2d 541 (1986).

11. In *Jeffery v. McHugh,* 166 W.Va. 379, 273 S.E.2d 837 (1981), this Court noted that "[t]he principle that juvenile records should be confi-

dential and, therefore, should not be public records is well accepted and is an express part of the law of most states." 166 W.Va. at 380 n. 1, 273 S.E.2d at 838–39 n. 1 (quoting ILA/ABA Juvenile Justice Standards Project, Standards Relating to Juvenile Records and Information Systems, § 15.1 (1977)).

whenever the reported incident involves a juvenile. Nor would it be prudent to allow access in such a way that we subvert the strong public policy against disclosure of the identity of juvenile offenders.

It seems to us that both of these interests can be reconciled by finding a constitutionally protected right of the press and public to a *redacted copy* of incident reports involving juveniles, structured to omit any information that could reasonably lead to the discovery of their identities. Because information such as: the exact time coupled with the exact location of the incident; the names of witnesses; and, the identity of the complainant would not preclude the press from conducting further research and interviews leading to disclosure of the names of the juveniles involved, this type of information should also be redacted.

▆▆▆ As a general rule, courts have invalidated laws placing restrictions on rights protected by the First Amendment and *W.Va. Constitution*, Art. III, § 7 when the law at issue can be revised in such a way that it places less restraint on speech. Even when a state has the power to regulate an area dealing with free speech, as is the case here because of the interest in preserving juvenile confidentiality, it must not do so "by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama*, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964). Our goal is reasonable disclosure within the limits imposed by the State's interest in preserving the anonymity of juveniles. When incidents affecting public safety and welfare can be publicized without revealing the identities of juveniles involved by means other than the application of a blanket rule of nondisclosure, an incident report should be released to the press with the names of any juveniles (along with any information that could reasonably lead to the

discovery of the identity of the juveniles) redacted; redaction offers the least intrusive means of protecting the identity of juveniles, while respecting the right of the public under the West Virginia Freedom of Information Act, *W.Va. Code*, 29B–1–1 [1977] *et seq.*

The *Code* states that "[a]ll records of the state department, the court and its officials, law-enforcement agencies and other agencies or facilities *concerning a child* as defined in this chapter shall be kept confidential and shall not be released...." [Emphasis added.] *W.Va. Code* 49–7–1 [1978]. In fact, the legislature concluded that the confidentiality of juvenile records was so necessary that it made it a misdemeanor willfully to violate *W.Va. Code* 49–5–17 [1978] or *W.Va. Code* 49–7–1 [1978]. As we previously noted, Texas law offers guidance on the issues presented in this case. The Texas juvenile records confidentiality statute, Tex.Family Code Ann. § 51.14 (1994), is similar to West Virginia's statutes in that it protects against public inspection of law enforcement records "concerning a child." [12]

A recent opinion of the Texas Attorney General noted that "juveniles must be treated differently" in accordance with the Family Code; however, the rest of the police information, including the offense and booking information, notation of any release or transfer, details of the arrest, and bonding information, must be released under the provisions of the open records law. Tex.O.R.D. No. 394 (July 28, 1993). The opinion concluded that "the names of juveniles, and any information which might identify a juvenile, may be withheld from disclosure ... regardless of where it might be found in the police department's law enforcement records." *Id.* at 7.

▆▆▆ We conclude that West Virginia confidentiality statutes should likewise be read to promote the goal of protecting juve-

---

**12.** The confidentiality provisions of the Texas statute read, in pertinent part:

(c) ... law-enforcement files and records concerning a child shall be kept separate from files and records of arrests of adults ...

(d) ... the law-enforcement files and records are not open to public inspection nor may their contents be disclosed to the public, but

inspection of the files and records is permitted by:

(1) a juvenile court having the child before it in any proceeding;

(2) an attorney for a party to the proceeding; and

(3) law-enforcement officers when necessary for the discharge of their official duties.

nile anonymity, rather than broadly construed to prevent disclosure of otherwise public information that would be contained in redacted police incident reports involving juveniles. The *Code* states that "juvenile records are not public records." *W.Va.Code* 49–5–17(c) [1978]. The Circuit Court ruled that the incident report was specifically exempted from disclosure under *W.Va.Code* 29B–1–4(5) [1977] as a result of the juvenile confidentiality statutes; and [13] that this provision overrides the public records disclosure provisions of the West Virginia FOIA. However, we hold that this section of the Code is not applicable to the information requested by the Appellant newspapers.

■ The newspapers requested access to factual information contained in a 22 February 1993 police incident report, involving juveniles, from which the identity of the juveniles had been redacted. Incident reports are basically factual recitations of the responding officer's knowledge of the occurrence. *Asbury Park Press, supra.* Broadly defining juvenile records to include redacted incident reports is not necessary to protect the identity of the juveniles and to preserve the confidentiality of their records. Although the statute is intended to protect the confidentiality of juvenile records, releasing a redacted copy of the incident report at issue in this case would not require a breach of that confidentiality. [14]

■ Accordingly, we hold that the factual data contained in a properly redacted incident report does not rise to the level of a "juvenile record" protected from disclosure (absent court order) by the confidentiality statutes. Therefore, allowing access to these reports will not impede any law enforcement function, nor will it compromise juvenile con-

fidentiality. [15] The Circuit Court was given a copy of the incident report and had the opportunity to determine which portions of the report were confidential and should be redacted. Instead, the Circuit Court ruled that the entire document was exempt from disclosure. For the aforementioned reasons, we reverse the ruling of the Circuit Court of Wood County and remand for further proceedings consistent with this opinion.

*Reversed and Remanded.*

BROTHERTON, C.J., did not participate.

MILLER, J., Retired, sitting by temporary assignment.

---

13. The juvenile records confidentiality statutes appear in *W.Va.Code* 49–5–17 [1978] (expungement of records) and *W.Va.Code* 49–7–1 [1978] (confidentiality of records), all in the chapter entitled "Child Welfare".

14. The Legislature recognized that disclosure is appropriate in certain circumstances, provided that the identity of the juvenile is protected. Specifically, *W.Va.Code* 49–5–17(d) provides for disclosure when a "person doing research requests disclosure, on the condition that information which would identify the child or family

involved in the proceeding shall not be divulged."

15. In *State v. Van Isler,* 168 W.Va. 185, 186, 283 S.E.2d 836, 837 (1981), we stated that "[p]art of the purpose and intent behind that scheme is to protect the anonymity of juvenile offenders and to assure that they are accorded a fresh start, unhaunted by past trouble, when they reach their majority. *See, State ex rel. Daily Mail Pub. Co. v. Smith,* 161 W.Va. 684, 248 S.E.2d 269 (1978), *aff'd,* 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979)."