NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack

Case No. 2023-0208

Citation: Union Leader Corp. v. N.H. Dep't of Safety, 2024 N.H. 35

UNION LEADER CORPORATION

v.

NEW HAMPSHIRE DEPARTMENT OF SAFETY

Argued: February 13, 2024
Opinion Issued: July 3, 2024

Malloy & Sullivan, Lawyers Professional Corporation, of Hingham, Massachusetts (Kathleen C. Sullivan on the brief and orally), for the plaintiff.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Brendan A. O'Donnell, assistant attorney general, on the brief and orally), for the defendant.

COUNTWAY, J.

[¶1] The plaintiff, Union Leader Corporation (Union Leader), appeals an order of the Superior Court (Kissinger, J.) dismissing its suit against the defendant, the New Hampshire Department of Safety (Department), in which Union Leader sought to compel the Department to disclose records under the

Right-to-Know Law, RSA chapter 91-A (2023 & Supp. 2023).  We reverse and remand.

[¶2] The following facts were recited in the trial court's order or relate the contents of documents in the record.  On October 13 and November 21, 2022, Union Leader requested records from the Department under the Right-to-Know Law.  Union Leader sought any records, including incident reports, related to the response by New Hampshire State Police to the Sununu Youth Services Center (SYSC) on October 7 and 8, 2022.  Union Leader specifically requested such records "with confidential information redacted."  The Department refused disclosure on the ground that "law enforcement investigative records pertaining to juvenile delinquency . . . are confidential per RSA 169-B and are therefore not publicly available under RSA 91-A."

[¶3] Union Leader then filed the instant action to compel the Department's compliance with Union Leader's request.  In its complaint, Union Leader alleged, on information and belief:

> [S]ince August of 2022, police and emergency medical services have responded to calls for help at least ten (10) times in response to incidents at [SYSC], some resulting in serious injuries to staff and residents, and property damage.  The State Police have been making routine "check-ins" at the facility since September.

(Footnote omitted.)  Union Leader supplements that background with representations in its brief that this "unprecedented use of police and medical help" arose from severe understaffing: "Leading up to the October 7th State Police presence, the SYSC center had only twenty youth counselors on staff as opposed to the ideal number of forty[-]five, and three of the center's four teachers had left."

[¶4] The Department moved to dismiss.  The trial court ordered the Department to inform the court whether it had initiated juvenile delinquency proceedings arising out of the October 7 and 8 incidents "and, if so, whether all records covered by Union Leader's request directly pertain to those proceedings."  The Department filed its response under seal, after which the court granted the motion to dismiss.  The court noted that "juvenile delinquency proceedings were brought against multiple juveniles involved in the October 7, 2022 incident" and found that "[t]he requested records contain the facts that underlie the basis for . . . juvenile delinquency proceedings."  Therefore, relying in large part on our decision in Petition of State of New Hampshire (Disclosure of Juvenile Records), 172 N.H. 493 (2019), the court concluded that "RSA 169-B:35 prohibits the release of the records Union Leader requests."  The court reasoned that public inspection of those records was "otherwise prohibited by statute" for purposes of RSA 91-A:4, I.  RSA 91-A:4, I (2023).  This appeal followed.

2

[¶5] Because the trial court based its dismissal of this action solely on its interpretation of RSA 169-B:35 and RSA 91-A:4, I, our review is de novo. See Petition of State, 172 N.H. at 496. "When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "We consider the words and phrases of the statute within the context of the statute as a whole." Id. "Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." Id. "When interpreting several statutory provisions that involve the same subject matter, the provisions must be construed together so that they lead to a logical result reflective of the legislative purpose of the statutes." Id.

[¶6] These "ordinary rules of statutory construction apply to our review of the Right-to-Know Law." Am. Civil Liberties Union of N.H. v. N.H. Div. of State Police, 176 N.H. 302, 306 (2023) (quotation omitted). "We resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate the law's statutory and constitutional objectives." Id. (quotation omitted).

[¶7] The Right-to-Know Law provides, in pertinent part:

Every citizen during the regular or business hours of all public bodies or agencies, and on the regular business premises of such public bodies or agencies, has the right to inspect all governmental records in the possession, custody, or control of such public bodies or agencies, including minutes of meetings of the public bodies, and to copy and make memoranda or abstracts of the records or minutes so inspected, except as otherwise prohibited by statute or RSA 91-A:5.

RSA 91-A:4, I (emphasis added). As relevant here, RSA 169-B:35 provides:

Court records of proceedings under this chapter, except for those court records under RSA 169-B:36, II, shall be kept in books and files separate from all other court records. Such records shall be withheld from public inspection but shall be open to inspection by officers of the institution where the minor is committed, juvenile probation and parole officers, a parent, a guardian, a custodian, the minor's attorney, the relevant county, and others entrusted with the corrective treatment of the minor. Additional access to court records may be granted by court order or upon the written consent of the minor. Once a delinquent reaches 21 years of age, all court records and individual institutional records, including police records, shall be closed and placed in an inactive file.

3

RSA 169-B:35, II (2022).

[¶8] Union Leader argues that it is not seeking "court records of proceedings under" RSA chapter 169-B. Id. The Department disagrees, arguing that we ruled in Petition of State that "confidential 'court records' include law enforcement investigatory records concerning a juvenile subject to the provisions of RSA chapter 169-B," and that our reasoning in that case "applies with equal force to Union Leader's present petition under RSA chapter 91-A." Union Leader counters that the protection afforded under RSA 169-B:35 "can be construed to cover the records at issue only by broadening and extending the application of" Petition of State "to the very different facts, circumstances, and context of this case."

[¶9] Because the parties' arguments in this case focus on our treatment of the term "court records" in Petition of State, we now examine that decision. In Petition of State, the Office of the Attorney General (AGO) challenged the trial court's denial of the AGO's request "to release records underlying its investigation into an incident involving minors." Petition of State, 172 N.H. at 494. The records sought to be released comprised "approximately 400 pages consisting of, among other things, transcripts of interviews conducted by the child advocacy center, the AGO, and the Claremont Police Department; Claremont Police Department documents; and medical records." Id. at 495. As a result of the investigation, delinquency petitions were filed against one of the juveniles involved in the incident. Id. at 494.

[¶10] We affirmed the trial court's ruling that the records were confidential under RSA 169-B:35. Id. at 494. We explained:

> RSA chapter 169-B establishes special, largely non-public, procedures for juveniles and authorizes broad restrictions on access to juvenile case and court records. The importance the legislature attaches to the confidentiality of juvenile records is reflected in the fact that disclosure of records in violation of RSA chapter 169-B is a crime. Although the chapter does not expressly define what is encompassed within the meaning of court records, we construe the statute liberally to effect its purpose of rehabilitating delinquent minors by shielding them from the environment surrounding adult offenders and inherent in the ordinary criminal processes. Thus, it is reasonable to conclude that the legislature intended that investigative records compiled by the AGO concerning a juvenile subject to the provisions of RSA chapter 169-B be confidential. Indeed, as the AGO acknowledged in its motions before the trial court, "the information gathered over the course of the Attorney General's investigation is relevant to . . . and likely will become part of any court records," and "[m]any of the facts obtained during the Attorney General's investigation of

4

the . . . matter — facts which include those in the Claremont Police Department's investigation of the same incident — form the basis for the prosecution of [the juvenile] that is now before" the court.

Id. at 498-99 (quotation and citations omitted).

[¶11] As Union Leader points out, Petition of State involved "the discretionary function of the trial court in refusing to release court records, in the context of a proceeding under RSA 169-B." See RSA 169-B:35, II (providing that "[a]dditional access to court records may be granted by court order"). Although the AGO in that case invoked both the Right-to-Know Law and Part I, Article 8 of the New Hampshire Constitution as "evidenc[ing] a strong public interest in the release of as much information as possible to the public," neither was directly at issue. Petition of State, 172 N.H. at 499 (quotation omitted). Indeed, the State explicitly acknowledged "that 'this is not a Petition pursuant to RSA 91-A.'" Id. Accordingly, any consideration of the public interest in access to juvenile court records took place in the context of a request to release records under RSA 169-B:35, II, not the Right-to-Know Law. See id. (noting that, in RSA chapter 169-B, the "legislature has . . . determined that confidentiality of juvenile proceedings and records prevails over the right of public access to such information"). This case, by contrast, arises under RSA chapter 91-A and requires us to consider the legislature's directives regarding public access in that law.

[¶12] The legislature's stated purpose in enacting RSA chapter 91-A was "to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1 (2023). Accordingly, "[a]lthough the statute does not provide for unrestricted access to public records, we resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate these statutory and constitutional objectives." Ortolano v. City of Nashua, 176 N.H. 175, 179 (2023) (quotation omitted). "As a result, we broadly construe provisions favoring disclosure and interpret the exemptions restrictively." Id. (quotation omitted).

[¶13] Construing the juvenile delinquency statutes and the Right-to-Know Law together, in light of their respective purposes, we agree with Union Leader that the term "court records" in RSA 169-B:35 should not be read so expansively as to "shield the entirety of a broad category of otherwise public records from a request made pursuant to the Right to Know Law, RSA 91-A, even if that record is related to alleged unlawful conduct by unidentified minors." We find instructive Ogden Newspapers, Inc. v. City of Williamstown, 453 S.E.2d 631 (W. Va. 1994), which drew a distinction between "factual information about incidents impacting public safety and welfare" and those "aspects of a juvenile criminal investigation" for which confidentiality plays a "central role . . . in a juvenile's rehabilitation." Ogden Newspapers, Inc., 453

5

S.E.2d at 637 (noting that "the newspaper argues that it was merely seeking information regarding the time, date, place and nature of the incident, not the juveniles' names"). The court concluded that "both of these interests can be reconciled by finding a constitutionally protected right of the press and public to a redacted copy of [police] incident reports involving juveniles." Id. at 638. It stated that the state's juvenile confidentiality statutes "should . . . be read to promote the goal of protecting juvenile anonymity, rather than broadly construed to prevent disclosure of otherwise public information that would be contained in redacted police incident reports involving juveniles." Id. at 638-39. It reasoned that "[b]roadly defining juvenile records to include redacted incident reports is not necessary to protect the identity of the juveniles and to preserve the confidentiality of their records," and therefore held that "the factual data contained in a properly redacted incident report does not rise to the level of a 'juvenile record' protected from disclosure (absent court order) by the confidentiality statutes." Id. at 639.

[¶14] We conclude that our juvenile delinquency statutes and Right-to-Know Law, as well as our decision in Petition of State, can be similarly reconciled. The Right-to-Know Law exempts records whose disclosure is "otherwise prohibited by statute." RSA 91-A:4, I. RSA 169-B:35, II prohibits disclosure of juvenile "court records," a term that the statute does not define, but which we interpreted in Petition of State. Petition of State construed that term to reach "investigative records compiled by the AGO [and in the AGO's possession] concerning a juvenile subject to the provisions of RSA chapter 169-B." Petition of State, 172 N.H. at 499. We now clarify that to the extent Petition of State's interpretation of "court records" subject to RSA 169-B:35 encompasses records generated and possessed by governmental entities other than the courts, it includes only information whose disclosure would run counter to the purpose of rehabilitating delinquent minors. See id. at 498-99. This refinement effectuates the juvenile delinquency statutes' purpose of rehabilitating delinquent minors while also ensuring "the greatest possible public access to the actions, discussions and records of all public bodies." RSA 91-A:1.

[¶15] In the instant case, Union Leader argues:

Th[e] public has a right to know how the State of New Hampshire responded to the needs and behaviors of unidentified children in its custody on October 7, [2022]. Plagued with crisis after crisis, and chronically understaffed, [SYSC] was regularly relying on the State Police for the safety of its inhabitants in October of [2022]. The public has a right and a duty to know how the State Police handled the situation. How many Troopers responded? Were they in riot gear? Did the situation escalate or de-escalate in response to their presence? How long did it take them to get there? Union Leader's request seeks information about the government's

6

response to events at [SYSC] on October 7th — not "court records of proceedings under [chapter 169-B]."

(Citation omitted.) It is conceivable that information in the Department's possession could answer these questions without interfering with the rehabilitation of the minors against whom juvenile petitions were filed. It is also conceivable that responsive records could be redacted so as to ensure that their disclosure neither conflicts with nor compromises the rehabilitative purpose of RSA chapter 169-B.

[¶16] The record before us does not contain the withheld records and the Department's response to the trial court's order regarding whether any juvenile delinquency proceedings had arisen out of the incidents at issue lacks sufficient detail to determine whether any information in those records would be disclosable in accordance with this decision. Accordingly, we reverse the trial court's order and remand for it to make those determinations consistently with this opinion.

<u>Reversed and remanded</u>.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but subsequently disqualified herself and did not participate in further review of the case.

7