376 S.E.2d 581

## HORACE MANN INSURANCE COMPANY, a Corporation

v.

## James V. LEEBER, Brian H., An Infant Under the Age of Eighteen Years, David H., Pat H. and the Raleigh County Board of Education.

### No. CC985.

Supreme Court of Appeals of West Virginia.

Dec. 20, 1988.

---

Kimberly G. Mann, Lynch, Mann, Smith & Mann, Beckley, for appellant.

John A. Hutchison, James R. Sheatsley, Earl Kent Hellems, Gorman, Sheatsley & Hutchison, Beckley, for Brian H. et al.

John R. Hoblitzell, Jr., Karen Speidel Rodgers, Kay, Casto & Chaney, Charleston, for Raleigh Co. Bd. of Ed.

McHUGH, Chief Justice:

This case presents two related questions of first impression in this jurisdiction, specifically, whether a homeowner's or other liability insurer has a duty to (1) defend and to (2) pay on behalf of its insured when an action has been brought against the insured based upon alleged sexual misconduct and when the insurance policy has an exclusion from coverage for "liability ... caused intentionally by ... the insured." The Circuit Court of Raleigh County (the "trial court") answered these questions in the negative and certified the questions to us.[1] We agree with the answers of the trial court.

I

James V. Leeber was a teacher employed by the Board of Education of Raleigh County, West Virginia (the "Board"), and was assigned to a certain junior high school in Beckley, West Virginia. Leeber cultivated an abnormal relationship with some of

1. *See* *W.Va.R.App.P.* 13; *W.Va.Code,* 58–5–2 [1967].

his students, trying to become their friend, confidant and surrogate parent. The relationship between Leeber and one of his students, Brian H., evolved into one wherein Leeber made sexual advances and allegedly took sexual liberties, such as touching Brian's genitalia.

Upon discovering overtly sexual contact between Leeber and their son, the parents of Brian H. sought criminal prosecution of Leeber. Leeber was immediately dismissed from his teaching position. He later pleaded guilty to two counts of sexual abuse in the third degree, misdemeanors under *W.Va.Code*, 61–8B–9(c) [1984].[2]

Brian H.'s parents later filed a civil action ("the underlying action") against Leeber and the Board in which they demanded damages from the defendants based upon the intentional, willful, wanton and negligent acts of Leeber in having sexual contacts with Brian H. and in seducing and enticing him into a relationship which caused emotional distress to Brian H. and his parents. The Board filed a cross-claim against Leeber. The parties undertook some discovery in the underlying action.

Thereafter Horace Mann Insurance Company ("Horace Mann") filed a declaratory judgment action[3] against Leeber, the Board, Brian H. and his parents in the trial court to determine whether Horace Mann had an obligation to defend Leeber in the underlying action and whether it would be required to afford coverage for any judgment which might be rendered against Leeber for the alleged conduct, in light of the so-called "intentional injury" exclusion in the homeowner's insurance policy in question. This exclusion provides: "This policy does not apply to liability ... caused intentionally by or at the direction of any insured[.]"[4]

As he had done in the underlying action, Leeber filed an answer in the declaratory judgment action in which he denied the allegations of intentional, willful and wanton acts, as well as denying any actionable negligence.

■■■ Upon Horace Mann's motion for judgment on the pleadings in the declaratory judgment action,[5] the trial court granted such motion and certified these questions to this Court, answering them in the negative:

---

**2.** Under *W.Va.Code*, 61–8B–9(a) [1984], "[a] person is guilty of sexual abuse in the third degree when he subjects another person to sexual contact without the latter's consent, when such lack of consent is due to the victim's incapacity to consent by reason of being less than sixteen years old." *W.Va.Code*, 61–8B–1(6) [1984] defines "sexual contact" as

any intentional touching, either directly or through clothing, of the anus or any part of the sex organs of another person, or the breasts of a female eleven years old or older, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

The 1986 amendment to *W.Va.Code*, 61–8B–1(6) was not yet in effect at the time of the alleged sexual contact by Leeber.

*See generally* annotation, *Criminal Conviction as Rendering Conduct for Which Insured [Was] Convicted [as] Within Provision of Liability Insurance Policy Expressly Excluding Coverage for Damage or Injury Intended or Expected by Insured,* 35 A.L.R. 4th 1063 (1985).

**3.** *See W.Va.Code,* 55–13–2 [1941]; *W.Va.R.Civ.P.* 57.

**4.** The policy states that there is coverage for the insured's legal liability caused by an occurrence.

An "occurrence" is defined by the policy as "an *accident,* including continuous or repeated exposure to substantially similar conditions." (emphasis added) The certified questions presented do not include the effect of this coverage definition. Accordingly, we do not determine in this case whether that definition means an intentional act is not covered even if *no* injury therefrom was intended.

The policy also states: "We will *defend* any suit seeking damages, *providing* the suit resulted from bodily injury or property damage *not excluded* under this [liability] *coverage.*" (emphasis added)

**5.** Horace Mann improperly denominated its motion as a motion for summary judgment. Matters outside the pleadings in the declaratory judgment action, such as affidavits or discovery matters, were *not* presented to the trial court. The motion was consequently one for a judgment on the pleadings. *See W.Va.R.Civ.P.* 12(c). The trial court granted Horace Mann's motion. A motion for summary judgment which is granted does not present a certifiable question; instead, the same is an appealable final order. *See W.Va.Code,* 58–5–2 [1967]. A ruling on a motion for judgment on the pleadings is, however, certifiable. *Id.*

Does an insurance company which provides a general liability insurance policy containing a so-called "intentional injury" exclusion have a duty to (1) defend and to (2) pay on behalf of its insured, an adult public school teacher who allegedly had sexual contacts with one of his minor students?

## II

At the outset we set forth a few general principles, also set forth by this Court in *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986). First, any ambiguity in the language of an insurance policy is to be construed liberally in favor of the insured, as the policy was prepared exclusively by the insurer. This principle applies to policy language on the insurer's duty to defend the insured, as well as to policy language on the insurer's duty to pay. Second, the duty of an insurer to defend an insured is generally broader than the obligation to provide coverage, that is, to pay a third party or to indemnify the insured, in light of the language in the typical liability policy which obligates the insurer to defend even though the suit is groundless, false or fraudulent.[6] Third, an insurer's duty to defend is normally tested by whether the allegations in the complaint against the insured are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy. Consequently, there is no requirement that the facts alleged in the complaint against the insured specifically and unequivocally delineate a claim which, if proved, would be within the insurance coverage.

*Donnelly v. Transportation Insurance Co.,* 589 F.2d 761, 765 (4th Cir.1978), *as amended on denial of rehearing,* Jan. 30, 1979, recites other general principles with which we agree. First, if part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims, although it might eventually be required to pay only some of the claims. Second, an insured's right to a defense will not be foreclosed unless such a result is inescapably necessary. Thus, third, a liability insurer need not defend a case against the insured if the alleged conduct is entirely foreign to the risk insured against.

There is a split of authorities on the specific questions involved in this case, namely, whether there is a duty to (1) defend the insured in an action for, and to (2) pay for, damages allegedly caused by the sexual misconduct of the insured, when the liability insurance policy contains a so-called "intentional injury" exclusion. The majority of the jurisdictions deciding these questions hold that there is neither a duty to defend nor to pay under such circumstances.[7] Most courts deny liability insur-

---

**6.** There is no such expression of the duty to defend in the insurance policy in this case.

**7.** *See CNA Insurance Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689 (1984) (sexual abuse of minor stepdaughter by stepfather over ten-year period); *American States Insurance Co. v. Borbor,* 826 F.2d 888 (9th Cir.1987) (applying California law) (affirming exclusion of liability insurance coverage for insured who molested nursery school children by undressing, touching and photographing them in various sexual poses); *State Farm Fire & Casualty Co. v. Huie,* 666 F.Supp. 1402 (N.D.Cal.1987) (applying California law) (forcible rape of minor), *aff'd sub nom. State Farm Fire & Casualty Co. v. Bomke,* 849 F.2d 1218 (9th Cir.1988); *Fire Insurance Exchange v. Abbott,* 204 Cal.App.3d 1012, 251 Cal. Rptr. 620 (1988) (two cases; in one case, insured fondled minor's thigh and caused her to touch his penis; in other case, insured teacher masturbated fourteen-year-old boy and had "oral copulation" with him as part of homosexu-

al relationship); *Allstate Insurance Co. v. Kim W.,* 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984) ("lewd or lascivious acts" upon a child under age of fourteen), *hearing denied* (Cal. Dec. 19, 1984); *Troelstrup v. District Court,* 712 P.2d 1010 (Colo.1986) (en banc) (insured's homosexual acts with, and a sexual assault upon, a minor); *McCullough v. Central Florida YMCA,* 523 So.2d 1208 (Fla.Dist.Ct.App.1988) (5th Dist.) (sexual molestation of three young boys by fondling their genitals); *Landis v. Allstate Insurance Co.,* 516 So.2d 305 (Fla.Dist.Ct.App.1987) (3d Dist.) (sexual batteries inflicted upon, or molestation of, children); *Altena v. United Fire & Casualty Co.,* 422 N.W.2d 485 (Iowa 1988) (various nonconsensual sex acts with an adult); *Harpy v. Nationwide Mutual Fire Insurance Co.,* 76 Md.App. 474, 545 A.2d 718 (1988) (sexual abuse, including sexual intercourse, of minor by her father); *Terrio v. McDonough,* 16 Mass.App. Ct. 163, 450 N.E.2d 190 (sexual assault and battery and nonsexual assault and battery in-

ance *coverage* for alleged sexual misconduct by applying an objective test to an intentional injury exclusion in the policy. They hold that the insured must have intended not only the act (the alleged sexual contact) but also must have intended to cause *some* kind of *injury*. However, the intent to cause some injury will be *inferred* as a matter of *law* in a sexual misconduct liability insurance case, due to the nature of the act (the alleged sexual contact), which is so *inherently* injurious, or "substantially certain" to result in some injury, that the act is considered a criminal offense for which public policy precludes a claim of unintended consequences, that is, a claim that *no* harm was intended to result from the act. Once the intent to cause some injury is inferred as a matter of law in a sexual misconduct liability insurance case, the majority view is that it is immaterial that the actual injury caused is of a different character or magnitude than that subjectively intended. *See, e.g., Western National Assurance Co. v. Hecker,* 43 Wash. App. 816, 824–25, 719 P.2d 954, 959–60

(1986); *Harpy v. Nationwide Mutual Fire Insurance Co.,* 76 Md.App. 474, 483, 545 A.2d 718, 723 (1988). *See generally* 7A J. Appleman, *Insurance Law and Practice* § 4492.02, at 29, § 4501.09 (rev.1979); 11 G. Couch, *Cyclopedia of Insurance Law* §§ 44:289, 44:298 (rev. 2d ed. 1982); 12 G. Couch, *Cyclopedia of Insurance Law* § 44A:133 (rev. 2d ed. 1981); annotation, *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured,* 31 A.L.R. 4th 957 (1984).

Under the majority view, a liability insurer would have no duty to *defend* a civil action against the insured based upon alleged sexual misconduct because, as seen, there is, under such view, definitely, as a matter of law, no duty to pay.

As seen from the great variety of sexual contacts involved in the cases following the majority rule, *see supra* note 7, the application of the majority rule rejecting an alleged duty to defend or to pay in sexual misconduct liability insurance cases is not

flicted upon adult), *review denied,* 390 Mass. 1102, 453 N.E.2d 1231 (1983); *Linebaugh v. Berdish,* 144 Mich.App. 750, 376 N.W.2d 400 (1985) (sexual contacts, involving penetration, inflicted upon minor); *Frankenmuth Mutual Insurance Co. v. Kompus,* 135 Mich.App. 667, 354 N.W.2d 303 (1984) (homosexual acts, constituting criminal offenses, by psychiatrist against adult patients), *appeal denied* (Mich. Feb. 28, 1985); *Horace Mann Insurance Co. v. Independent School District No. 656,* 355 N.W.2d 413 (Minn.1984) ("sexual contacts" inflicted upon minor student by school teacher-counselor; same insurer and same material facts as in case now before us); *State Farm Fire & Casualty Co. v. Williams,* 355 N.W.2d 421 (Minn.1984) (nonconsensual homosexual acts repeatedly inflicted upon physically disabled adult victim); *Estate of Lehmann v. Metzger,* 355 N.W.2d 425 (Minn. 1984) (sexual assaults upon minor by her adult uncle over four-year period); *Fireman's Fund Insurance Co. v. Hill,* 314 N.W.2d 834 (Minn. 1982) ("sexual play" with minor by foster parent); *Illinois Farmers Insurance Co. v. Judith G.,* 379 N.W.2d 638 (Minn.Ct.App.) (various acts of sexual contact by minor with minor victims), *review denied* (Minn. Mar. 21, 1986); *Mutual Service Casualty Insurance Co. v. Puhl,* 354 N.W.2d 900 (Minn.Ct.App.1984) (homosexual assault upon minor), *review denied* (Minn. Feb. 6, 1985); *Vermont Mutual Insurance Co. v. Malcolm,* 128 N.H. 521, 517 A.2d 800 (1986) (homosexual assaults upon minor; not a covered "oc-

currence," but inherently injurious, so not accidental); *Allstate Insurance Co. v. Thomas,* 684 F.Supp. 1056 (W.D.Okla.1988) (criminally touching and molesting a child under sixteen years of age in a lewd and lascivious manner); *Rodriguez v. Williams,* 107 Wash.2d 381, 729 P.2d 627 (1986) (en banc) (sexual abuse of minor by stepfather); *Public Employees Mutual Insurance Co. v. Rash,* 48 Wash.App. 701, 740 P.2d 370 (1987) (sexual molestation); *Grange Insurance Association v. Authier,* 45 Wash.App. 383, 725 P.2d 642 (1986) ("indecent liberties" taken with minors or "touching" them "in a criminal manner"), *review denied,* 107 Wash.2d 1024 (1987); *Western National Assurance Co. v. Hecker,* 43 Wash.App. 816, 719 P.2d 954 (1986) (forcible anal intercourse with an adult).

The Arkansas court arrived at its decision to exclude liability insurance coverage by applying a very broad test to the intentional injury exclusion in the policy. That is, that court apparently would always infer, as a matter of law, an intent to cause "the natural and probable consequences" of any intentional act. We, like almost all of the other courts adopting the majority rule of rejecting an alleged duty of a liability insurer to defend or to pay in light of an intentional injury exclusion in the policy, believe that such an exclusion applies only when the act and some injury are intended, but that for some acts, such as alleged sexual misconduct, an intent to cause some injury will be inferred as a matter of law.

restricted to those cases involving "violence," or penetration or a lengthy period of time during which the sexual contacts have occurred. *See Allstate Insurance Co. v. Thomas,* 684 F.Supp. 1056, 1059–60 (W.D.Okla.1988).

■ As in *Western National Assurance Co. v. Hecker,* 43 Wash.App. 816, 719 P.2d 954 (1986), a case applying the majority rule, we note that the insurance policy in question contains an exclusion from coverage for *"liability ...* caused intentionally by ... any insured." (emphasis added by us) "Clearly, one does not normally *intend* to cause *liability."* 43 Wash.App. at 824, 719 P.2d at 959 (emphasis in original). A literal reading of certain language in an insurance policy will not be applied when it results in an absurdity. We read "the phrase to mean that the *injury must be intentionally caused* by the insured." 43 Wash.App. at 824, 719 P.2d at 959 (emphasis in original).

The minority of the courts apply a strictly subjective test to an intentional injury exclusion in a liability insurance policy and hold that a liability insurer has the duty to *defend* an action against the insured for damages allegedly caused by the sexual misconduct of the insured, unless the complaint against the insured alleges that the insured *actually* intended to cause the *specific* injury suffered; under this minority view, the liability insurer's duty to *pay* exists unless the *evidence* shows such *actual* intent.[8]

One of the principal justifications offered for this minority approach is that it results in another potential source of compensation for the injured person. The same could be said, of course, for "spreading the risk" of any intentional tort via liability insurance coverage. This Court has recognized, however, that "[m]ost courts conclude that it is against public policy to permit insurance coverage for a purposeful or intentional tort [, meaning a tort involving the intent to act and to cause some harm]." *Hensley v. Erie Insurance Co.,* 168 W.Va. 172, 178, 283 S.E.2d 227, 230 (1981).

The minority rule has been criticized as "logically untenable[.]" *Western National Assurance Co. v. Hecker,* 43 Wash.App. 816, 825, 719 P.2d 954, 960 (1986). A completely subjective test would virtually make "it impossible to preclude coverage for intentional [injuries] absent admissions by insureds of a specific intent to harm or injure. Human nature augers against any viable expectation of such admissions." *Truck Insurance Exchange v. Pickering,* 642 S.W.2d 113, 116 (Mo.Ct.App.1982). Similarly, a leading commentator has stated: "The best position is that injury caused by an assault is not accidental even if the specific injury was not intended." 11 G. Couch, *Cyclopedia of Insurance Law* § 44:298, at 467 (rev. 2d ed. 1982).[9]

The majority rule rejecting an alleged duty to defend or to pay in sexual misconduct liability insurance cases is consistent with the "doctrine of reasonable expectations." This Court, in syllabus point 8 of *National Mutual Insurance Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356

---

**8.** *See State Auto Mutual Insurance Co. v. McIntyre,* 652 F.Supp. 1177 (N.D.Ala.1987) (applying Alabama law in cases *not* involving sex offenses) ("nonviolent" sexual abuse of minor granddaughter by insured); *Zordan v. Page,* 500 So.2d 608 (Fla.Dist.Ct.App.1986) (2d Dist.) (insured's sexual fondling of his minor stepgranddaughter), *review denied sub nom. South Carolina Insurance Co. v. Zordan,* 508 So.2d 15 (Fla.1987), *contra* are 5th Dist. and 3d Dist. opinions in *McCullough* and *Landis,* respectively, *see supra* note 7; *MacKinnon v. Hanover Insurance Co.,* 124 N.H. 456, 471 A.2d 1166 (1984) (per curiam) (sexual abuse of minor stepdaughter; public policy of state did not preclude insurance coverage for intentional torts), *but see Vermont Mutual Insurance Co. v. Malcolm,* 128 N.H. 521, 517 A.2d 800 (1986) (*denying* liability

insurance coverage for sex offense, as inherently injurious), *see supra* note 7.

**9.** Obviously distinguishable from liability insurance cases involving assaults, including sexual assaults or other sexual misconduct, are cases, such as *Floyd v. Equitable Life Assurance Society of the United States,* 164 W.Va. 661, 264 S.E.2d 648 (1980) (per curiam), involving an accidental death benefit provision of a life insurance policy. With respect to the latter, the insurance provision in question is not applicable when a very specific type of harm, namely, death, as opposed to nonfatal injury, is reasonably foreseeable by the insured, which is ordinarily a question of fact upon the evidence.

S.E.2d 488 (1987), gave this definition of that doctrine: "With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Without discussing the technical applicability of the doctrine of reasonable expectations to the facts of this case, we simply believe that the insured under a homeowner's insurance policy does not reasonably expect the insurer to defend an action against the insured for, and to pay for, damages alleged to have been caused by the sexual misconduct of the insured.

In the present case Leeber and the Board draw our attention to the fact that the complaint in the underlying action against them alleges not only intentional, physical conduct by Leeber but also certain vaguely identified negligent conduct, a sort of "negligent" seduction into the nonphysical aspects of the relationship with Brian H. so as to cause emotional harm. This Court agrees with the following response to a very similar argument in *Harpy v. Nationwide Mutual Fire Insurance Co.*, 76 Md. App. 474, 487, 545 A.2d 718, 725 (1988): "The 'negligent' conduct for which coverage was sought ... was alleged 'negligent infliction of emotional distress,' a tort for which no independent cause of action exists in [this state]." Similarly, the allegations of "negligence" in the complaint are "a transparent attempt to trigger insurance coverage by characterizing allegations of [intentional] tortious conduct under the guise of 'negligent' activity. Our review of the complaint reveals that [the plaintiff in the underlying action] seeks recovery for the alleged intentional acts committed by

[the insured]. Thus, there was no duty [upon the homeowner's insurer] to defend[.]" *Linebaugh v. Berdish*, 144 Mich. App. 750, 763, 376 N.W.2d 400, 406 (1985).[10]

Consequently, Horace Mann has no duty here to defend Leeber because the complaint in the underlying action against him and the Board is not "reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 195, 342 S.E.2d 156, 160 (1986). The so-called "intentional injury" exclusion in the insurance policy in this case applies here as a matter of law to the alleged sexual misconduct, so that the "result [the exclusion of coverage] is inescapably necessary." *Donnelly v. Transportation Insurance Co.*, 589 F.2d 761, 765 (4th Cir.1978), *as amended on denial of rehearing*, Jan. 30, 1979. The alleged actionable conduct in the present case "was entirely foreign to the risk insured against." *Id.*

This Court holds that there is neither a duty to defend an insured in an action for, nor a duty to pay for, damages allegedly caused by the sexual misconduct of an insured, when the liability insurance policy contains a so-called "intentional injury" exclusion. In such a case the intent of an insured to cause some injury will be inferred as a matter of law.[11]

Having answered the certified questions, and no further proceedings being necessary in the trial court as the result of this opinion, we direct this case to be dismissed from the docket of this Court.

Certified questions answered.

---

10. In *Hensley v. Erie Insurance Co.*, 168 W.Va. 172, 283 S.E.2d 227 (1981), we recognized that an automobile liability insurance policy would cover punitive damages arising from an automobile accident. This was based upon a claim of gross, reckless or wanton *negligence* rather than upon an intentional tort as in the present case. Furthermore, the underlying accident was within the policy coverage.

11. Horace Mann also raises an issue of an alleged lack of timely notice to it of the filing of

the underlying action. We do not address that issue because the trial court did not decide the same and certify that question to us. *See Collins v. AAA Homebuilders, Inc.*, 175 W.Va. 427, 428 n. 1, 333 S.E.2d 792, 793 n. 1 (1985); *Gee v. Gibbs*, 162 W.Va. 821, 828, 253 S.E.2d 140, 144 (1979); *Brumfield v. Wofford*, 143 W.Va. 332, 335, 102 S.E.2d 103, 105 (1958); *Means v. Kidd*, 136 W.Va. 514, 516, 67 S.E.2d 740, 742 (1951).