479 S.E.2d 902

Tracy L. **LANEY,** Administratrix of the Estate of Herbert T. Laney, Jr., Tracy L. Laney, in Her Individual Capacity, Wendy Laney, by Her Next Friend, Mother and Legal Guardian, Tracy L. Laney, and Krystal Laney, by Her Next Friend, Mother and Legal Guardian, Michelle Laney, Plaintiffs Below, Appellants,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** Allstate Insurance Company and Dale R. Taylor, Defendants Below, Appellees.

Dale R. **TAYLOR,** Third–Party Plaintiff Below, Appellee

v.

The **ALIBI BAR,** Richard Gray, The Riverside Inn, Jenetari Zeitz, The Moulin Rouge Club, and Leonard Brogan, Third–Party Defendants Below, Appellees.

No. 23124.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1996.

Decided Dec. 5, 1996.

County's denial of their motion for a new trial after an adverse jury verdict. On appeal, Mrs. Laney is aggrieved by the circuit court's denial of her motion *in limine* in which she sought to preclude the defendant/appellee, Dale Taylor, from arguing that he was not the driver in the fatal accident because of a juvenile adjudication against Mr. Taylor. Mrs. Laney also maintains that the jury verdict was against the preponderance of the evidence. Because the circuit court did not abuse its discretion in refusing to estop collaterally the issue of who was driving, and because the record contains sufficient evidence to support the verdict, we find no merit in Mrs. Laney's assignments of error, and therefore, we affirm the circuit court.

## I.

### FACTS AND BACKGROUND

On October 2, 1988, a single car accident occurred on Route 36 near Newton, West Virginia, in which the car rolled over and came to rest against a tree. As a result of the accident, Mr. Taylor, one of the car's occupants, was severely injured and Herbert T. Laney, Jr., the other occupant, was killed. The major factual question in this case is who, either Mr. Taylor or Mr. Laney, was driving the car at the time of the accident.

Mr. Taylor and the decedent, who were then sixteen (16) and twenty-eight (28) years old, respectively, met at a concert in Roane County on October 1, 1988. Mr. Taylor left the concert to go with the decedent in his car for some cigarettes. According to Mr. Taylor, after drinking at two local bars, Mr. Laney drove to a third bar in the Charleston area where they drank for several hours. The two parted for about a half hour, and after picking up Mr. Taylor, Mr. Laney drove to the interstate. According to Mr. Taylor,

L. David Duffield, Scott W. Andrews, Offutt, Eifert, Fisher, Duffield & Nord, Huntington, for Appellants.

James D. McQueen, Jr., Jeffery C. Dunham, McQueen, Harmon & Potter, L.C., Charleston, for Appellee Dale Taylor.

PER CURIAM: [1]

Tracy L. Laney, *et al.* (hereinafter Mrs. Laney), appeal the Circuit Court of Roane

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

244

who testified that he was light headed and ready to pass out when Mr. Laney picked him up, Mr. Laney drove about three or four miles on the interstate when he stopped and Mr. Taylor began driving. Except for moving his mother's car in the driveway, this was Mr. Taylor's first experience driving a car. Mr. Taylor did not know how far he drove on the interstate and did not recall either the accident or driving on any road other than the interstate. Mr. Taylor said that when he awoke in the hospital after the accident he thought he wrecked his bike.

Most of the evidence about who was driving the car came from medical and rescue workers who were called to the accident scene. Carrie Smith, who was the first person to arrive at the accident, testified that the driver was the person who survived the crash. However, Mr. Smith acknowledged that before the car, which had rolled over, was righted, both bodies were stacked on the driver's side and were indistinguishable. Mr. Smith also said that he was not close to the car until after it was righted. Mr. Smith's father, Steve Smith, testified that before the car was returned to an upright position, it was difficult to distinguish between the two occupants.

Several members of the Newton Volunteer Fire Department responded to the accident. Doyle Tawney, a volunteer fireman, testified that the driver was the living boy; however, he said he could not see much inside the car until it was rolled over and the top pulled back. Russell Goodwin, a deputy sheriff at the time of the accident, testified that at the time of the accident, Mr. Tawney and Dwayne Collins, another volunteer fireman, told him that both bodies were on the same side and "there was no way they could tell who the driver was." Officer Goodwin concluded in his report that he was unable to determine who the driver was. Sometime thereafter, Officer Goodwin was contacted by Mr. Tawney, who said that Mr. Collins and Delbert McKenzie, another volunteer fireman, said the injured boy was the driver because he was against the door and taken out first. Several weeks thereafter, Officer Goodwin met with the three volunteer firemen who informed him that the injured boy was the driver because they had cut the driver's seat belt off him. Based on this evidence, Officer Goodwin changed his accident report to list Mr. Taylor as the driver.

Two other volunteer firemen also testified that Mr. Taylor was the driver; however, their testimony was challenged with prior inconsistent statements and their friendship with Joe Truman, who was the brother-in-law of the decedent and the owner of the car involved in the accident. Mrs. Laney maintains that there was no confusion about who was driving; rather, the rescue workers were uncertain about the names of the victims. Mrs. Laney argues that the focus of the rescue workers was on saving lives and not learning the victims' names. She also notes that Mr. Taylor's emphasis on relationships to the decedent shows a lack of understanding about small towns, such as Newton, where everyone knows everyone and most are to some degree related.

Additional testimony was offered by Susan Moore Morton, the paramedic with the Clay County Ambulance Service and David Rogers, the Flight Paramedic for the Health Net Aeromedical Services. Ms. Morton, who had been in charge of extricating the occupants from the car, testified that her report listed Mr. Taylor as the passenger and she had no reason to believe she made a mistake in completing her report. Ms. Morton recalled that decedent was behind the steering wheel. Mr. Rogers testified that the dispatch records listed Mr. Taylor as the passenger. However, Margie Hensley, an EMT at the accident scene who climbed into the inverted car to check on the occupants, said that although both occupants were on the driver's side, Mr. Taylor was the driver. Ms. Hensley said that she did not see a seat belt on either occupant. Ms. Hensley, whose husband is a volunteer fireman, acknowledged her friendship with the volunteer firemen and that she had discussed the accident with them before talking to Mrs. Laney's lawyer in October 1994.

Before trial, Mrs. Laney made a motion *in limine* whereby she sought to preclude Mr.

Taylor from arguing that he was not driving at the time of the accident. Mrs. Laney's argument was based on a prior juvenile proceeding in which allegedly Mr. Taylor by plea agreement acknowledged that he was driving at the time of the accident. After the trial court refused to unseal Mr. Taylor's juvenile record and refused to grant Mrs. Laney's motion to preclude such argument, the evidence on the issue was presented at trial. Eventually the matter was submitted to the jury, which in a written note made the following inquiry:

Judge Gutsky [sic], Is [sic] the Statue [sic] of Limitations over for criminal action against Dale Taylor on this particular case? Can you answer this?

The trial judge advised the jury that they were not to consider that issue because it was not before them. Thereafter, the jury returned a verdict finding Mr. Laney was the driver, a decision which precluded recovery by Mrs. Laney.[2] Mrs. Laney then filed a motion for a new trial under Rule 59 of the West Virginia Rules of Civil Procedure arguing that the driver identification issue should have been precluded and that verdict was against the weight of the evidence. After the circuit court refused to grant a new trial, Mrs. Laney appealed to this Court.

## II.

## DISCUSSION

### A. Collateral Estoppel

 Mrs. Laney maintains that the circuit court erred in denying her motion *in*

*limine* whereby she sought to preclude Mr. Taylor from arguing that he was not driving. Mrs. Laney's preclusive argument was based on Mr. Taylor's alleged juvenile adjudication arising out of the accident.[3] In support of her argument, Mrs. Laney emphasizes the case of *State ex rel. Leach v. Schlaegel*, 191 W.Va. 538, 541, 447 S.E.2d 1, 4 (1994) (per curiam) in which we found in the particular case before us that a "guilty plea to battery within the criminal context collaterally estops [one] . . . from denying that very action in a subsequent civil action."

Mr. Taylor argues that unlike the defendant in *State ex rel. Leach v. Schlaegel*, he presented "meritorious grounds for evading the application of collateral estoppel" by presenting newly discovered evidence and because W. Va.Code 49–7–3 (1941) prohibits the use of evidence from or an order in a juvenile proceeding in any subsequent proceeding.

In *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983), our seminal case on collateral estoppel, after discussing the policy considerations that support the doctrine, namely the protection from multiple lawsuits, conservation of judicial resources and minimization of the possibility of inconsistent decisions, we gave the following summary of the doctrine:

Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit.

---

**2.** Mrs. Laney brought suit in three different capacities: (1) as administratrix of her late husband's estate; (2) as an individual; and (3) on behalf of Wendy Laney, the daughter of her and the decedent, Michelle Laney brought suit on behalf of Krystal Laney, another daughter.

**3.** Mrs. Laney also argues that Mr. Taylor's insurance company, State Farm Insurance, in a letter dated June 28, 1990 to counsel for Mrs. Laney, conceded that Mr. Taylor was the driver of the car. The letter stated, in pertinent part:

In order to keep you fully informed of our progress on this claim, this will advise you that we will extend liability coverage to Dale R. Taylor, driver of the 1980 Buick, based on implied permission to operate the vehicle.

An insurance company's decision to extend coverage is not an admission of any fact at issue, especially when considered in light of the insurer's duty to defend, even if the suit is groundless. *See Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988). Rule 411 (1994) of the West Virginia Rules of Evidence states, in pertinent part:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully.

*See* Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 4–11(A), (3d ed.1994). Given the context of the letter, we find no merit in Mrs. Laney's contention that Mr. Taylor, through his insurance company, conceded that he was driving the car. .

We have made this summary of the doctrine of collateral estoppel:

"But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res adjudicata.*" *Lane v. Williams,* 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965).

Syl. pt. 2, *Conley v. Spillers. See City of Huntington v. Bacon,* 196 W.Va. 457, 473 S.E.2d 743 (1996); *State v. Miller,* 194 W.Va. 3, 9, 459 S.E.2d 114, 120 (1995)(holding that collateral estoppel does not bar relitigation in a criminal proceeding of issues previously decided by a state administrative agency); *Glover v. Narick,* 184 W.Va. 381, 388–89, 400 S.E.2d 816, 823–24 (1990).

■ In *Conley v. Spillers,* although we abandoned the requirement of mutuality of the parties for the application of collateral estoppel (*see* Syl. pts. 4 and 5 of *Conley v. Spillers* ), we found that the assertion of the doctrine by a stranger to the first suit depended on several general inquiries. Syl. pt. 6 of *Conley v. Spillers,* states:

Whether a stranger to the first action can assert collateral estoppel in the second action depends on several general inquiries: Whether the issues presented in the present case are the same as presented in the earlier case; whether the controlling facts or legal principles have changed substantially since the earlier case; and, whether there are special circumstances that would warrant the conclusion that enforcement of the judgment would be unfair.

*In accord* Syl. pt. 2, *Walden v. Hoke,* 189 W.Va. 222, 429 S.E.2d 504 (1993).

■ Because the right to utilize collateral estoppel depends on the peculiar facts of each case, we have refused to recognize that a stranger to the first action has an automatic right to collateral estoppel. By vesting the circuit court with broad discretion concerning when to estop collaterally relitigation of an issue, we followed the rule stated in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552, 562 (1979). *Conley v. Spillers,* 171 W.Va. at 592, 301 S.E.2d at 224. The circuit court's discretion was recognized in Syl. pt. 7 of *Conley v. Spillers,* which states:

The application of the doctrine of collateral estoppel is discretionary with the trial court and rests upon a number of factual predicates, therefore, a writ of prohibition will not issue on the basis that the trial court abused its discretion in failing to enforce collateral estoppel.

In the case *sub judice,* Mrs. Laney essentially argues that our holding in *State ex rel. Leach v. Schlaegel* removed discretion from the circuit court when there has been a prior criminal adjudication. Mrs. Laney asserts that a *de novo* review is required because the circuit court erred as a matter of law in failing to follow *State ex rel. Leach v. Schlaegel.* However, this interpretation of *State ex rel. Leach v. Schlaegel* is not consistent with our holding in *Leach* or other cases. In *Leach,* we recognized that the "feasibility of applying the principle [of collateral estoppel] is within the discretion of the lower court," but because no "meritorious grounds for evading the application of collateral estoppel" were presented, we found the prior criminal judgment of guilt presented a compelling reason requiring the "application of collateral estoppel." *Leach,* 191 W.Va. at 541, 447 S.E.2d at 4. *Leach* did not remove discretion from the circuit court where there is a prior criminal admission or adjudication of guilt, but found such admission or adjudication an important factor to be considered. In *Leach,* the absence of any meritorious grounds for evading the application of collateral estoppel led us to conclude that the circuit court had abused its discretion in failing to estop collaterally a relitigation of the issue to which one of the parties had pled guilty.

In this case, the circuit court relied on the confidentiality provisions for juvenile matters

found in W. Va.Code 49–7–1 (1978) *et seq.* as meritorious grounds for evading the application of collateral estoppel.[4] W. Va.Code 49–7–1 (1978) requires that "[a]ll records of . . . the court and its officials . . . concerning a child . . . shall be kept *confidential and shall not be released.*"[5] (Emphasis added.) *See* W. Va.Code 49–5–17 (1996) ("[r]ecords of a juvenile proceeding conducted under this chapter are *not public records,* and therefore they shall not be disclosed to anyone unless disclosure is otherwise authorized by this section" (Emphasis added.)). W. Va.Code 49–7–3 (1941) states:

> *Any evidence given* in any cause or proceeding under this chapter, or *any order, judgment or finding* therein, or any adjudication upon the status of juvenile delinquent heretofore made or rendered, *shall not in any civil, criminal or other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatsoever* except in subsequent cases under this chapter involving the same child; nor shall the name of any child, in connection with any proceedings under this chapter, be published in any newspaper without a written order of the court; nor shall any such adjudication upon the status of any child by a juvenile court *operate to impose any of the civil disabilities ordinarily imposed by conviction,* nor shall any child be deemed a criminal by reason of such adjudication, *nor shall such adjudication be deemed a conviction,* nor shall any such adjudication operate to disqualify a child in any future civil service examination, appointment, or application. (Emphasis added.)

In addition to the confidentiality and the bar on use of juvenile records provisions, the Code also provides for the expungement of such record, which "has the legal effect of extinguishing the offense as if it never occurred." W. Va.Code, 49–5–18 (1996). In *State v. Van Isler,* 168 W.Va. 185, 187, 283 S.E.2d 836, 837 (1981), we noted the "Legislature has used direct forceful language to effecture" the protection of "the anonymity of juvenile offenders and to assure that they are accorded a fresh start." In *State v. Van Isler,* we refused to allow the use of "juvenile law enforcement records . . . in a criminal case as evidence in chief in the State's case." *State v. Van Isler,* 168 W.Va. at 188, 283 S.E.2d at 837–38. *See Jeffery v. McHugh,* 166 W.Va. 379, 273 S.E.2d 837 (1981)(refusing to expand on the legislatively created exceptions to the legislatively imposed rule of confidentiality of juvenile records). *See also Ogden Newspapers, Inc. v. City of Williamstown,* 192 W.Va. 648, 453 S.E.2d 631 (1994) (juvenile confidentiality requires redacted incident reports when juveniles are involved); *Nelson v. Ferguson,* 184 W.Va. 198, 202, 399 S.E.2d 909, 913 (1990)("a juvenile record cannot be used against a child in any court proceeding once he or she becomes an adult").

Mrs. Laney argues that because Mr. Taylor was over sixteen years old when he entered the plea agreement, he should not be accorded the benefit of confidentiality. In support of her argument, Mrs. Laney notes that W. Va.Code 49–5–1(d) allows the admission of extrajudicial statements made by youths over sixteen years old. However, the Legislature did not extend this age distinc-

---

**4.** Mr. Taylor also maintains that he presented "special circumstances" showing the unfairness of collaterally estopping the argument on the identity of the driver as required by Syl. pt. 6 of *Conley v. Spillers.* He alleges that the "special circumstances" include discovery of new and additional facts such as changes in the police report, witness' testimony and medical transportation documents.

Mrs. Laney argues that "[n]one of the facts and circumstances have [sic] changed subsequent to the entry of Taylor's guilty plea," and therefore only Mr. Taylor's guilty plea has a "crucial *indicia* of reliability."

**5.** Mrs. Laney maintains that granting her motion *in limine* would not have violated the confidentiality of Mr. Taylor's juvenile proceedings because then the jury would never have heard anything about those proceedings. Given that her motion *in limine* was based on what happened in the proceedings, Mrs. Laney's argument is similar to locking the barn door after the cow is missing, and both are ineffective either in keeping the cow contained or the juvenile records confidential.

tion to the confidentiality provisions, and we decline to add such a distinction where the Legislature did not.

We also note that Rule 609(d) (1994) of the West Virginia Rules of Evidence provides that evidence of juvenile adjudication generally is not admissible, and in no event may it be used against the juvenile. The one exception to Rule 609(d)'s prohibition against the admission of evidence of juvenile judgments is for attacking credibility of a witness other than the juvenile in limited criminal cases. Rule 609(d) provides:

> *Juvenile Adjudications.*—Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

*See* Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 6-9(A)(2)(d) (3d ed.1994).

Given the plain and clear language of the statutory provisions and Rule 609(d) of the West Virginia Rules of Evidence banning the use of juvenile records and any adjudication for any reason other than those specifically provided, we find that the circuit court did not abuse its discretion in denying Mrs. Laney's motion *in limine* whereby she sought to disclose Mr. Taylor's juvenile records.

■ We note that the denial of Mrs. Laney's motion *in limine*, did not foreclose her from presenting evidence on the factual question on who was driving the car; indeed, the only evidence precluded was directly related to the juvenile proceeding. Mrs. Laney was able to try to establish at trial exactly what the defendant admitted. Given the evi-

dence was presented to the jury, we find that any error arising from the failure to apply collateral estoppel was harmless. In Syl. pt. 4 of *McAllister v. Weirton Hosp. Co.*, 173 W.Va. 75, 312 S.E.2d 738 (1983), we stated:

> "On appeal of a case involving an action covered by the Rules of Civil Procedure, this Court will disregard and regard as harmless any error, defect or irregularity in the proceedings in the trial court which does not affect the substantial rights of the parties." Syl. pt. 2, *Boggs v. Settle*, 150 W.Va. 330, 145 S.E.2d 446 (1965).

*In accord* Syl. pt. 4, *Casteel v. Consolidation Coal Co.*, 181 W.Va. 501, 383 S.E.2d 305 (1989); *Reager v. Anderson*, 179 W.Va. 691, 700–1, 371 S.E.2d 619, 628–29 (1988).

### B. Insufficient Evidence

■ Mrs. Laney also argues that the verdict was against the preponderance of the evidence presented.[6] Mr. Taylor maintains that the jury's verdict was based on sufficient evidence and it should not be set aside because of conflicting evidence that was resolved by the jury's verdict.

■ Our general standard of review in civil cases was stated in Syl. pt. 4 of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996):

> This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard: conclusions of law are reviewed *de novo*.

*See also Wheeling Park Comm'n v. Hotel and Restaurant Employees*, 198 W.Va. 215, 479 S.E.2d 876 (1996); *State By and Through McGraw v. Imperial Marketing*, 196 W.Va. 346, 472 S.E.2d 792 (1996); *Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995).

■ In cases where we are asked to supersede a jury verdict because of the evi-

---

**6.** Mrs. Laney also assigned error to the trial court's failure to direct a verdict in her favor at the conclusion of the evidence and to grant a new trial. Because sufficiency of evidence is the central issue in these assignments of error, a separate discussion on these assignments is not necessary given our discussion on the sufficiency of the evidence presented.

dence, we have traditionally given every reasonable and legitimate inference to support the verdict and have assumed the facts that the jury might properly find under the evidence as true. Syl. pt. 3 of *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963), states:

> In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

*In accord* Syl. pt. 7, *Johnson by Johnson v. General Motors Corp.,* 190 W.Va. 236, 438 S.E.2d 28 (1993). We have long deferred the resolution of conflicting testimony and circumstances to a jury by holding that "[w]hen a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." Syl. pt. 4, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894 (1958). *In accord* Syl. pt. 6 *Johnson by Johnson v. General Motors Corp., supra;* Syl. pt. 2, *Walker v. Monongahela Power Co., supra.*

In this case, there was conflicting evidence concerning who was driving the car at the time of the accident. Mr. Taylor acknowledged that he drove on the interstate, but had no memory of driving on any other road or the accident. The other witnesses were not present when the accident occurred. Except for two witnesses who testified that Mr. Taylor was the passenger, most of the other witnesses testified at trial that Mr. Taylor was the driver. However, Mr. Taylor, through cross-examination, pointed out the discrepancies, the changed reports and the changed testimony. *See supra* section I. for the evidence presented to the jury. Mr. Taylor also questioned the witnesses' relationship to the decedent through the owner of the car.

■ As an appellate court, without the advantage of hearing the various witnesses, we are reluctant to substitute our opinion for that of a jury who was properly instructed on the standard of proof.[7] Because of the jury's unique ability to hear the evidence and judge the demeanor of the witnesses on an impartial basis, a jury verdict is accorded great deference, especially when it involves the weighing of conflicting evidence. Syl. pt. 2 of *French v. Sinkford,* 132 W.Va. 66, 54 S.E.2d 38 (1948) states: "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." *See also* Syl. pt. 3, *Pinnacle Mining Co. of Northern W.Va. v. Duncan Aircraft Sales of Florida, Inc.,* 182 W.Va. 307, 387 S.E.2d 542 (1989); Syl. pt. 2, *Dustin v. Miller,* 180 W.Va. 186, 375 S.E.2d 818 (1988); Syl. pt. 2, *Rhodes v. National Homes Corp.,* 163 W.Va. 669, 263 S.E.2d 84 (1979).

Accordingly, for the reasons set forth herein, we affirm the decision of the Circuit Court of Roane County.

Affirmed.

RECHT, Judge, sitting by temporary assignment.

---

7. On appeal, there was no allegation concerning the jury's instruction on the standard of proof. Syl. pt. 7 of *Wheeling Dollar Savings & Trust Co. v. Leedy,* 158 W.Va. 926, 216 S.E.2d 560 (1975), states:
> "Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal." *Syllabus* point 1, *State Road Commission v. Ferguson,* 148 W.Va. 742, 137 S.E.2d 206 (1964).