**ONE GATEWAY ASSOCIATES,**
**Plaintiff,**

v.

**WESTFIELD INSURANCE**
**COMPANY, Defendant.**

**No. Civ.A.5:01–0698.**

United States District Court,
S.D. West Virginia,
Beckley Division.

Feb. 21, 2002.

*Prete v. Royal Globe Ins. Co.,* 533 F.Supp. 332, 335 n. 9 (N.D.W.Va.1982)(emphasis added). That prediction, too, was not a direct holding.

J. Steven Hunter, Steve Hunter Associates, L.C., Lewisburg, West Virginia, for plaintiff.

Tanya Mendez Kesner, Brent Karleton Kesner, Kesner, Kesner & Bramble, Charleston, West Virginia, for defendant.

### *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending is Defendant's motion for summary judgment. The Court **GRANTS** the motion.

## I. FACTUAL BACKGROUND

In 1997, Plaintiff One–Gateway Associates ("One–Gateway") contracted with Wal–Mart Stores, Inc. ("Wal–Mart") to develop a site along U.S. Route 19 in Nicholas County for the construction of a Super Wal–Mart store. In January 1998, One–Gateway entered into a contract with the West Virginia Department of Transportation, Division of Highways ("DOH"). One–Gateway agreed to:

1. Construct, at its own expense, a frontage road along the eastern edge of the Wal–Mart development area, paralleling U.S. Route 19;

2. Make certain modifications to U.S. Route 19; and

3. Construct an approach from U.S. Route 19 to the frontage road.

Upon completion of construction, One–Gateway also agreed to convey the frontage road, including the approach to U.S. Route 19, to the DOH. If One–Gateway failed to obtain the land required for construction of the frontage road on or before June 1, 1998, DOH agreed to initiate an eminent domain proceeding for the purpose of acquiring the land. It also agreed to use its best efforts to obtain a right of entry so construction of the frontage road could proceed in accord with the construction schedule. The Super Wal–Mart store was constructed and opened for business.

One–Gateway, however, was unable to purchase the property for the frontage road. Accordingly, in August 1998 DOH filed a petition in the Circuit Court of Nicholas County to condemn the tract of land, which was then owned by Retail Designs, Inc. The taking was done for the ostensible purpose of constructing an ingress from U.S. Route 19 to the southern end of the frontage road bordering the Wal–Mart property. Retail Designs owns The Merchants Walk Shopping Center located at the southern end of the Wal–Mart property. Retail Designs' parking lot is located at the southern end of the frontage road and prevents the frontage road from connecting with U.S. Route 19 at that location.

By order dated March 8, 1999 the Circuit Court of Nicholas County denied DOH's petition for condemnation. The state court determined the taking was done for a private, not public, purpose, namely to benefit One–Gateway and Wal–Mart, and, thus, beyond the power of eminent domain. Subsequent to that ruling, the DOH opened to the public what had been a temporary construction road on the southern end of the frontage road. The construction road abuts Retail Designs' property which DOH originally sought to condemn. Located entirely on DOH property, the construction road bypassed Retail Designs' property and connected U.S. Route 19 to the frontage road. Thus, the road located on the DOH right-of-way provides a southern ingress from U.S. Route 19 to the Wal–Mart property, without a taking of private property owned by Retail Designs.

Retail Designs responded by instituting an action for injunctive relief against DOH. Retail Designs sought an order requiring DOH to close and abandon the new road it had opened. Retail Designs alleged DOH's actions effectively condemned its property and converted it into an access road for the private benefit of the Wal–Mart property. In addition, Retail Designs asserted it had suffered irreparable damage in the deprivation of the quiet use, control and enjoyment of its property and its subjection to additional incalculable wear, tear and maintenance.

On December 20, 1999 the Circuit Court of Nicholas County granted Retail Designs' petition for injunctive relief and ordered DOH to permanently close the southern ingress to all traffic on or before July 1, 2000. The state court found:

The efforts of DOH to prevent a burden on RDI's property have been ineffectual in that the following burdens still exist on the property of RDI: (a) there is traffic traveling, using RDI property as a frontage road, from West Webster Road to the One–Gateway Center; (b) there is traffic congested at the entrance to RDI's entrance on its lot; (c) there is an increased burden of traffic on the RDI property due to the southern access to One–Gateway's property; and (d) the congested traffic and the traffic pattern may cause a decrease in traffic trying to get into RDI's property by virtue of the configuration of the temporary, now permanent, construction road.

. . . .

Based upon the evidence presented, the opening of the temporary construction road as a permanent southern entrance was a configuration to try to skirt this Court's previous denial of the right of the DOH to condemn the property[.]

*State of West Virginia ex rel. One–Gateway Assocs., LLC v. Honorable Gary L. Johnson*, 208 W.Va. 731, 734, 542 S.E.2d 894, 897 (2000). DOH appealed the state court's order. The Supreme Court of Appeals refused the petition.

One–Gateway, a non-party to the injunction proceeding, then challenged the order via a petition for a writ of prohibition. One–Gateway's petition asserted the state circuit court erred by failing to join it as an indispensable party in Retail Designs' action for injunctive relief. One–Gateway argued the adjudication of Retail Designs' action impaired One–Gateway's ability to protect its claimed interest in the ingress to the southern portion of the developed property.

The Supreme Court of Appeals agreed with One–Gateway and granted the writ:

We believe . . . [One–Gateway] claims an interest relating to the subject of Retail Designs' injunction action and is so situated that the disposition of the action, as a practical matter, impairs the petitioner's ability to protect that interest. . . .

The southern ingress at issue provided a second means by which motorists could access . . . [One–Gateway's] commercial property. Because the southern ingress was closed, there is now only one other means by which traffic can enter and exit the petitioner's property. Access to one's property is a fundamental interest in that property. Accordingly, we believe that . . . [One–Gateway] was materially interested in Retail Designs' injunction action and was affected by the result of that injunction. We conclude, therefore, that the petitioner had a clear legal right to be joined as an indispensable party in Retail Designs' injunction action.

*Johnson*, 208 W.Va. at 735–36, 542 S.E.2d at 898–99.[1]

When the action returned to the Circuit Court of Nicholas County, Retail Designs filed an "AMENDED COMPLAINT FOR INJUNCTIVE RELIEF." (Am.Compl. at 1). The amendment added One–Gateway as a party. The Amended Complaint seeks no damages from either DOH or One–Gateway. It asserts:

1. DOH's conversion of the construction entrance to a permanent one-way road constitutes a *de facto* condemnation;

2. Certain burdens have been placed on its property by DOH's actions, including an increased traffic burden on Retail Designs' property and congested traffic;

---

**1.** Section One of this Memorandum Opinion relies upon the thorough factual and proce- dural discussion in *Johnson*.

3. The roadway creates an involuntary servitude on Retail Designs' property; and

4. "DOH's actions have left Retail Designs without an adequate remedy at law" resulting in "irreparable damage as a result of the actions of DOH[.]" Am.Compl. ¶¶ 24, 26.

The Amended Complaint explicitly states "[t]he purpose behind the filing of this Complaint is to provide One–Gateway with the opportunity to present its arguments against the closure of the converted construction entrance." (*Id.* ¶ 30). The Prayer for Relief states:

WHEREFORE, Retail Designs, Inc., prays for a temporary restraining order, a preliminary injunction, and a permanent injunction, requiring DOH to close and abandon the converted construction entrance to One–Gateway's property, thereby removing the involuntary servitude placed upon Retail Designs' property by DOH and One–Gateway and returning Retail Designs' property to its former use and benefit.

*Id.*

One–Gateway instituted this action in August 2001 with a two page Complaint. The Complaint alleges One–Gateway had in force a commercial general policy of insurance, along with a commercial umbrella policy, issued by Defendant Westfield Insurance Company. It asserts:

That an action involving the liability and arising out of the operations of One Gateway Associates was filed and Westfield has refused to defend Gateway and as a result Gateway has incurred attorney's fees in excess of One Hundred Thousand ($100,000.00) Dollars and may incur further attorney's fees and expenses as a result of Westfield's refusal to provide a defense and employ attorneys to represent and otherwise defend Gateway.

Compl. ¶ 4. Westfield moved for summary judgment, asserting the policies of insurance do not cover the losses sustainable by One–Gateway and that Westfield has no duty to defend One–Gateway.

## II. DISCUSSION

### A. Applicable Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another," To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995). It is through this analytical prism the Court evaluates Defendant's motion.

### B. Resolution of the Duty to Defend Dispute

■ The Court recently addressed an insurer's duty to defend in *Community Antenna Services, Inc. v. Westfield Ins. Co.,* 173 F.Supp.2d 505 (S.D.W.Va.2001):

The duty of an insurer to defend the insured is "generally broader than the obligation to provide coverage, that is to pay a third party or to indemnify the insured." *Horace Mann Ins. Co. v. Leeber,* 180 W.Va. 375, 378, 376 S.E.2d 581, 584 (1988). The insurer's duty to defend is "normally tested by whether the allegations in the complaint against the insured are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Id.* Because insurance policies are prepared solely by insurers, "any ambiguities in the language of insurance policies must be construed liberally in favor of the insured." *Aetna Cas. & Sur. Co. v. Pitrolo,* 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986). As a result, where there is any question about an

insurer's obligations under the policy, it must be "construed liberally in favor of an insured." *Id.* Additionally, "[w]here the policy language is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. pt. 1, *Marshall v. Fair,* 187 W.Va. 109, 416 S.E.2d 67 (1992) (citing syl. pt. 5, *National Mutual Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987)).

Where "part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims, although it might eventually be required to pay only some of the claims." *Leeber,* 180 W.Va. at 378, 376 S.E.2d at 584 (citing *Donnelly v. Transportation Ins. Co.,* 589 F.2d 761, 765 (4th Cir.1978), *as amended on denial of rehr'g,* Jan. 30, 1979). "An insured's right to a defense will not be foreclosed unless such a result is inescapably necessary." *Id.* The test is whether the alleged conduct is "entirely foreign to the risk insured against," *id.,* or whether any of the allegations in the ... complaint are "reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Leeber,* 180 W.Va. at 378, 376 S.E.2d at 584. Only if the conduct is necessarily foreign to the risk insured need the liability insurer not defend.

*Id.* at 509–10 (emphasis added). With these principles in mind, the Court examines Westfield's putative duty to defend.

■ There appear to be two policies potentially capable of calling for a defense of the insured's interests. The first is a Commercial Insurance Coverage Policy (CICP). The CICP potentially provides coverage under its Commercial General

Liability Coverage (CGL) or its Commercial Umbrella Coverage (CUC).[2]

CGL coverage is limited to one of three possible situations: (1) bodily injury and property damage; (2) personal and advertising injury; and (3) medical payments. The latter, medical payments, is not at issue. The first potential area of coverage is controlled by the "Insuring Agreement" on page 1 of the CGL. It states:

> We will pay those sums that the insured becomes *legally obligated to pay as damages* because of "bodily injury" or "property damage" to which this insurance applies. *We will have the right and duty to defend any "suit" seeking those damages.* We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>
> . . . .

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under* SUPPLEMENTARY PAYMENTS—COVERAGES A AND B.

(CGL Policy at 1, Ex. C, Def.'s Mot. for Summ.J. at ¶ I.A.1.a.)[3] (CGL Policy) (emphasis added).[4] The Insuring Agreements for both the personal and advertising injury section and the CUC have materially identical provisions to those that are underscored above.

Based on the foregoing language, no coverage or duty to defend is present under the three Insuring Agreements for a variety of reasons. Foremost, coverage and defense duties do not arise because Retail Designs seeks no damages against One–Gateway.[5] Only injunctive relief is sought in the Amended Complaint filed in the Circuit Court of Nicholas County. Fur-

---

**2.** One–Gateway also purchased coverage under a Westfield business policy, in force from 6/20/2000 to 6/20/2001, and a commercial policy in force from 2/25/1999 to 2/25/2000. One–Gateway does not dispute Westfield's assertion neither policy was in force at the time of the allegations at issue in the underlying action.

**3.** This language was later modified by endorsement. The change, however, does not affect the disposition.

**4.** "Property damage" is defined as:

Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. (CGL Policy at 11). This same definition appears in the CUC. An "occurrence" under the CGL Policy "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 10). Retail Designs' alleged injuries do not come within the definitions. Nowhere does the Amended Complaint allege either

physical injury to, or loss of use of, tangible property as a result of One–Gateway's actions, which certainly would not be by "accident" in any event. At best, Retail Designs complains merely of "burdens" that exist on its property but not actual damage to its property. Also, Retail Designs faults DOH, not One–Gateway, for imposing those burdens. Retail Designs further asserts it "has been deprived of the quiet use, control and enjoyment of its property; has been subjected to additional *incalculable* wear, tear and maintenance" but asserts such "irreparable damage" comes "as a result of the actions of DOH[.]" (Am.Compl. ¶ 26 (emphasis added).)

Further, a "suit" is defined as "a civil proceeding *in which damages* because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies *are alleged.*" CGL Policy at 11. As noted *infra*, no damages are alleged in the Amended Complaint.

**5.** The referenced "Supplementary Payments" do not extend the duty to defend in the instant case. Those payments come into play only "with respect to any claim or 'suit' [Westfield] defend[s]." CGL Policy at 5. Westfield undertook no such defense here. It was correct in its decision determining no coverage, no defense duty.

ther, it appears the injunctive relief is sought in actuality only against DOH. One–Gateway is a party to the case only because it demanded to be added by way of its petition for writ of prohibition. The requested payment by Westfield of One–Gateway's associated fees and costs resulting from the latter's voluntary, and indeed hard-fought, admission to the state court action is not supported by any coverage or defense-duty language found in the parties' insurance agreements.

Accordingly, the Court **GRANTS** Westfield's motion for summary judgment. The Court further **FINDS** and **CONCLUDES:**

1. That Westfield has no duty to afford coverage, defend or indemnify One–Gateway for this action or its participation in the underlying action; and

2. That this action is **DISMISSED WITH PREJUDICE** and stricken from the docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and to publish a copy on the Court's website at www.wvsd.uscourts.gov.